29596. PRICE *v.* MATTHEWS.

DECIDED DECEMBER 4, 1942.

*Alec Harris,* for plaintiff in error. *Lanham & Parker,* contra.

SUTTON, J. Mrs. Prentice Matthews filed in the court of ordinary of Floyd County, Georgia, on September 3, 1941, an application to have a guardian appointed for the property of Mrs. Eveline Holland Price, who was an inmate of the Georgia State Hospital for the insane at Milledgeville, Georgia. J. J. Price, husband of Mrs. Eveline Holland Price, filed a response and caveat to

said application, in which he admitted that a guardian should be appointed for his wife, but asked that he be appointed the said guardian because he was her husband and because he owned the other one-half interest in the property owned by his wife. After hearing the case, the ordinary ruled against the caveator and appointed Hugh McCrary, the county guardian, as the guardian for the property of Mrs. Price. J. J. Price appealed from this judgment to a jury in the superior court. The case was tried in the superior court on January 29, 1942, and the jury returned a verdict against the caveator and appointed the said Hugh McCrary, the county guardian, as guardian for the property of the said Mrs. Price. J. J. Price filed a motion for new trial, which was overruled, and the exception here is to that judgment.

The evidence was substantially as follows: The caveator testified that his wife was first carried to the hospital in Milledgeville in January, 1934, and that she was brought back home twice for two short periods between that date and October, 1935, and that since October 27, 1935, she had been an inmate of the Georgia State Hospital for the insane at Milledgeville. He testified that her one-half interest in a certain farm was worth around $1500, and that he rented the place during the year 1941 for $305; that he made five or six bales of cotton on the place in 1936; that he did not farm the place in 1937 but lived in the house on the place and rented the land that year for $125, and that he had the place rented in 1939 for $305; that Mr. McClung had the place rented for three years and paid him $15 a month, and Mr. Cook paid him $125 per year for the place the year he had it rented. He testified that some representative from the hospital at Milledgeville called on him to pay $30 per month for his wife's board but that he refused to do so, and that he had not sent her any money or income from the farm since the year 1936; but he testified that if he was appointed guardian of her property he would in the future send her her part of the income from her property.

Some ten witnesses testified in behalf of the caveator as to his good character, and that in their opinion he was capable of handling his wife's property as guardian therefor; but most of them testified, on cross-examination, that, if he had not sent his wife any money or income from her property since 1936, in their opin-

ion he would not be a proper person to be appointed guardian for her property.

Mrs. J. L. Jolly, sister of Mrs. Eveline Holland Price, testified that it was at her request that the application for guardianship was filed, as she felt that it was to the best interest of her sister to have said guardian appointed. She testified that the hospital at Milledgeville sent a representative to see her and asked her if she would pay $10 per month on her sister's board at the institution at Milledgeville, and that she did send $10 per month for several months, and that her other sister also sent the said hospital at Milledgeville money, and that she had personally sent her sister money and clothing at different times since the year 1936; and that her sisters, Mrs. Barnett and Mrs. Bowman, had also sent her money and clothing. She testified that Mrs. Price did the milking and churning and prepared the milk and butter at their dairy to sell to help pay for the farm which was jointly owned by her and the caveator.

Mrs. B. K. Barnett testified that she had sent her sister, Mrs. Price, in the hospital at Milledgeville, money and clothing and the things she needed during the past three years, and that her other sisters had done the same thing. She also testified that her sister, Mrs. Price, paid $850 on the farm in question when it was first bought.

The caveator also testified that the last communication he had with them down at the hospital in Milledgeville was the year before last (1940), and that "I was last down at the asylum last summer. I went to see my brother. I did not see wife while I was there. I did not inquire about what she was needing or how she was. I did not want to see her, because I knew she would want to come home."

1. It was sought by the application to have a guardian appointed for the property of Mrs. Price, who was an inmate of the Georgia State Hospital for the insane at Milledgeville, and where she had been so confined continuously for a period of approximately seven years next before the trial of this case. The Code provides: "The ordinaries of the several counties are hereby authorized to appoint guardians for insane persons without a trial, as provided for in section 49-604, whenever it shall be made to appear to them that such insane person is in the Milledgeville State Hospital upon commitment thereto, as provided in section 49-604, or when it shall

be shown by the certificate of the superintendent of the Milledge-ville State Hospital that such person is hopelessly insane and that it is necessary for such person to have a guardian to take charge of his property." § 49-614. "Guardians appointed under section 49-614 shall be appointed under the same rules and regulations as govern the appointment of guardians for minor children, and the ordinary of the county where such insane person lived at the time he was sent to the Hospital shall have jurisdiction of the appointment of such guardian." § 49-615. "The ordinary of the county of the domicile of a minor having no guardian shall have the power of appointing a guardian of the person and property, or either, of such child. If the ward shall be above the age of 14 years before a guardian shall be appointed, he shall have the privilege of selecting a guardian, and if such selection shall be judicious the ordinary shall appoint him. The ward having once exercised this privilege may not do so again, except upon cause shown for the removal of the first selection." § 49-105. "Every application to be appointed guardian of a minor under the age of 14 years, other than the child of the applicant, shall be made to the ordinary, and notice thereof given by him in the newspaper in which the legal advertisements of the county are published, once a week for four weeks before such letters shall be granted. At the regular term next after the expiration of the notice, *the letters may be granted either to the applicant or some other person, in the discretion of the court.*" § 49-112. "Among collaterals applying for the guardianship, the nearest of kin by blood, if otherwise unobjectionable, shall be preferred. *The ordinary, however, in every case, may exercise his discretion according to the circumstances and, if necessary, grant the letters to a stranger in blood.*" § 49-107. (Italics ours.)

It will be seen from the above Code sections that the ordinaries of the several counties are authorized to appoint guardians for insane persons, under the same rules and regulations as govern the appointment of guardians for minors, and that in the appointment of a guardian for a minor letters may be granted to the applicant or some other person, in the discretion of the court, and the ordinary in every case, among collaterals applying, may exercise his discretion according to the circumstances of the case, and, if necessary, grant letters to a stranger in blood. As illustrative of the

broad discretion of the ordinary in such matters, it is provided by Code, § 49-109, that if there shall be no application for guardianship, and a necessity for a guardianship shall exist, he may vest such guardianship in the county guardian, clerk of the superior court, or in any person or persons residing in the county, whom he shall deem fit and proper in his discretion.

The superior court on the trial of this appeal had the same discretion in the appointment of a guardian for Mrs. Price as the ordinary had, and in the exercise of such discretion the jury was authorized under the law and the evidence to return a verdict naming Hugh McCrary, the county guardian, as the guardian of the property of Mrs. Price. It clearly appears from the evidence that, although the caveator had had possession and control of his wife's property during her confinement in the State Hospital at Milledgeville, he had not sent her any money or anything else, but had applied the income from the farm to his own use and benefit, after paying taxes and some other expenses. His own witnesses testified that, if he had not sent his wife any money or income from her property for the past five or six years that she had been in the hospital at Milledgeville, in their opinion he was not a suitable person to be appointed guardian for her property.

2. The two exceptions to the charge of the court, as contained in grounds 1 and 2 of the amended motion, are without merit. The excerpts complained of when taken in connection with the context and other portions of the charge were not erroneous. Nor was it error to fail to give the requests to charge as set out in ground 3 of the amended motion.

3. The verdict appointing the county guardian as guardian of the property of Mrs. Price being authorized under the law and the evidence, and no error of law appearing, the court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. In my opinion neither the ordinary nor a jury on appeal to the superior court has authority to appoint a county guardian in a case where there has been an application for guardianship filed and where there is no showing that the estate is likely to go unrepresented unless the county guardian is appointed. Code §§ 49-109, 49-501, 49-505, 113-1306; *Smith* v. *Collins,* 61 *Ga. App.* 801 (7 S. E. 2d, 600) ; *Bailey* v. *McAlpin,*

121 *Ga.* 111 (48 S. E. 699). I am also of the opinion that the evidence in this case did not authorize the finding that the husband of the incompetent was not a fit and proper person to be appointed guardian. I dissent from the judgment of affirmance.